**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JELLYVISION, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 10-CV-00426 |
| | ) | |
| AFLAC INCORPORATED, | ) | Judge James F. Holderman |
| | ) | |
| Defendant. | ) | Magistrate Judge Susan Cox |
| | ) | |
| | ) | |

**DEFENDANT'S MEMORANDUM OF LAW IN
SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Aflac Incorporated

("Aflac") files this memorandum of law in support of its motion to dismiss with prejudice all

counts of the Complaint filed against it by Plaintiff Jellyvision, Inc. ("Jellyvision").[1]

## I.     INTRODUCTION

Aflac recently launched a campaign to promote its supplemental insurance products and

services under the mark YOU DON'T KNOW QUACK, a play on its famous duck character.

The purpose of the campaign is to educate the public about supplemental insurance in general

and Aflac's products in specific.  To support the campaign, Aflac has created a website that is

located at the domain name <youdontknowquack.com>.  The site contains a variety of

information about Aflac and its services.  In one section of the website, Internet users may click

---

[1] Aflac Incorporated expressly denies that it has any liability in this matter.  Aflac Incorporated is the parent company of American Family Life Assurance Company of Columbus, a Nebraska corporation.  It is this subsidiary, not the Defendant, that operates the website and offers the services at issue.  For the sake of convenience, however, we refer to the party offering the services simply as "Aflac." Defendant reserves all rights to deny this and any other allegations in the Complaint in the event the Court denies this motion.  However, even if the Court takes Jellyvision's allegations regarding Aflac Incorporated as true, this issue has no bearing on the instant motion.

on a link and be presented with three true/false questions that are designed to challenge a consumer's understanding of the nature and benefits of supplemental insurance.

Jellyvision sells multiple choice trivia games over the Internet and on CD-ROM under the trademark YOU DON'T KNOW JACK, a play on the commonly used expression. Jellyvision contends that the three true/false questions on the Aflac website are a "game" and likely to confuse consumers into believing that Aflac's services originate from, or are sponsored or endorsed by, Jellyvision.

Jellyvision's claim is implausible on its face and should be dismissed.  A review of the relevant pages of Aflac's website readily reveals that Aflac is not using the YOU DON'T KNOW QUACK mark in connection with a game.  What Jellyvision calls a game is in reality nothing more than two health and wellness related statements, presented in "true or false" format (e.g., "an apple a day keeps the doctor away"), followed by a similar true/false question about health insurance.  These statements are not a game in any form or fashion; they are not trivia questions, and no score is given or recorded.  The questions are merely a way of challenging potential customers' assumptions about what they *think* they know about their health, and, ultimately, what they *think* they know about their health insurance.

There is no reference to the three questions in the advertising for the website, and a consumer would not know that the questions are even on the website until landing on the site to learn more about Aflac and its services.  In light of the fact that the famous AFLAC word mark and Aflac duck mark appear throughout the site as well as in the design version of the YOU DON'T KNOW QUACK mark itself, it defies reason and common sense to suggest that consumers would be confused by the three questions on the website into believing that Aflac's insurance services are in any way associated or affiliated with Jellyvision.  Significantly,

- 2 -

Jellyvision does not contend that Aflac's use of the YOU DON'T KNOW QUACK mark would infringe Jellyvision's rights if the three questions did not appear on the website (*i.e.*, Jellyvision does not allege that use of the mark to identify insurance underwriting services is likely to cause consumer confusion with Jellyvision's YOU DON'T KNOW JACK branded games).

Although the federal pleading requirements are liberal, a Complaint must still state a claim that is plausible on its face to survive a motion to dismiss. Jellyvision's Complaint fails to do so and should be dismissed with prejudice in its entirety.

## II.    STATEMENT OF FACTS

### A.    Aflac and Its YOU DON'T KNOW QUACK Mark

Defendant Aflac is a Georgia corporation with its principal place of business in Columbus, Georgia. (Compl. ¶ 9.) Aflac's primary business is underwriting supplemental insurance.[2] (*Id.* ¶ 18.)

Aflac has recently begun using the service mark YOU DON'T KNOW QUACK in connection with the promotion of its supplemental insurance services. (*Id.* ¶ 22.) The mark, which features the famous Aflac duck mark, is presented as follows:



(Compl. ¶ 18.) Aflac uses the mark on a website that is located at the domain names <youdontknowquack.com> and <getquack.com> (the "Website"). (*Id.*; A copy of the version of the Website, as it appeared on the date Jellyvision filed its complaint, is attached as Exhibit 1.)[3]

---

[2]    *See* footnote 1, *supra*.

[3]    Although Jellyvision refers to the Website several times in its Complaint, it did not attach a copy. (*See, e.g.*, Compl. ¶¶ 18, 19, 21, 23, 27, etc.). True and correct printouts of the original and current versions of the website are attached hereto as Exhibit 1 (original version) and Exhibit 2 (current version).

Once on the home page of the Website, visitors see the YOU DON'T KNOW QUACK mark and the phrase "and we can prove it in 3 simple questions."[4]  (Ex. 1, p. 1.)  This page resolves to a screen where the user can select "continue to misconceptions" or "skip to the facts." (Ex. 1, p. 2.)   Upon selecting the "continue to misconceptions" link, the visitor is presented with two lighthearted true/false questions related to personal health and well being and then a third question regarding insurance.  (Compl. ¶ 18.)  The first two questions can vary, but include such statements as "drinking water upside down gets rid of the hiccups" and "reading in dim light will damage your eyes."[5]  (Ex. 1, pp. 3-4.)  These statements, which challenge common misconceptions regarding health related issues, are followed by a third question regarding the types of expenses that are covered by major medical insurance (*e.g.,* "your major medical insurance covers all the costs you'll incur if you break your leg" or "if you have to stay in the hospital, your major medical insurance will cover both you and your family's overnight accommodations") (Ex. 1, p. 5; Ex. 2, p. 18.)  No answers are given to any of the questions until the user scrolls through all three questions, at which point the user is informed that all three statements are false.  (Ex. 1, p. 6.)  No "score" is kept and visitors are not told how many "questions" they got right or wrong.  (*Id.*)  Regardless of whether the visitor clicks the "true" or

---

For the reasons addressed below, the Court may consider the site's content without converting this Rule 12(b)(6) motion into a motion for summary judgment.

[4]    Shortly after the Complaint was filed, while making some changes to the Website in connection with some unrelated regulatory matters, Aflac - in hopes of resolving this litigation – made changes to the Website to make the true/false questions less prominent.  These changes are not in any way a concession that there's any merit to Jellyvision's claims regarding the original version of the website.  If the court would prefer to view an electronic version of the original version of the Website (*see* footnote 1, *supra*), one is included on a CD-ROM as Exhibit 3 to this Motion.  Please note that because of the sophisticated Adobe Flash technology used by the site, in order to view the Website on CD-ROM, one is likely to need to make adjustments to certain Flash settings.  Instructions for accomplishing these adjustments are included with Exhibit 3.  The *current* version of the Website, however, can be viewed online at http://www.youdontknowquack.com/.

[5]    Other questions include, "an apple a day keeps the doctor away," "if you cross your eyes for too long, they will get stuck that way," "if you swallow gum it stays in your stomach for 7 years," and "if you pull out a gray hair, two will grow back in its place."  (Ex. 2, pp. 13-16.)

"false" button in response to each statement, the site advances to the next statement with no

feedback given at any time.

Aflac drives traffic to the Website through a banner advertisement that runs on third-

party websites, such as the online versions of The New York Times and CNN.  (Compl. ¶ 19.)  A

copy of the banner advertisement is attached to Jellyvision's Complaint as Exhibit B.  The

banner ad does not mention the true or false section of the YOU DON'T KNOW QUACK

Website, but does include numerous prominent uses of the AFLAC mark and famous Aflac duck

logo.  (Compl. at Ex. B)  Nowhere in the banner ad or on the Website are users invited to play a

game of any kind.  (*Id.*; *see also* Ex. 1.)

**B.      Jellyvision and Its YOU DON'T KNOW JACK Mark**

Plaintiff Jellyvision "creates and develops original interactive and non-interactive

experiences."  (Compl. ¶ 10.)  The Jellyvision product that gives rise to this litigation is an

electronic trivia game it sells under the trademark YOU DON'T KNOW JACK.  (*Id*. ¶ 10.)  The

game entails players answering humorous multiple-choice questions.  (*Id*.)  The game is played

on computers, in CD-ROM or online format, or on Sony PlayStation videogame systems.  (*Id*. ¶

11.)

Jellyvision filed the present action on January 21, 2010, alleging that Aflac is using its

YOU DON'T KNOW QUACK mark in connection with a "game" and that such use is likely to

confuse consumers into believing there is an affiliation, connection, or association between Aflac

and Jellyvision's YOU DON'T KNOW JACK game.  (*Id*. ¶ 34.)  The Complaint asserts the

following causes of action against Aflac:  trademark infringement under Section 32(1) of the

Lanham Act (Count I); unfair competition in violation of Section 43(a) of the Lanham Act

(Count II); violation of the Illinois Uniform Deceptive Trade Practices Act (Count III), violation

of the Illinois Consumer Fraud and Deceptive Business Practices Act (Count IV); and common

law unfair competition and trademark infringement (Count V).

## III.   ARGUMENT AND CITATION TO AUTHORITY

**A.   Rule 12(b)(6) Standards.**

A district court may grant a motion to dismiss for failure to state a claim under Rule

12(b)(6) if it is clear that no relief can be afforded to the plaintiff based on the allegations set

forth in its complaint.  *See Evans ex rel. Evans v. Lederle Labs.,*, 167 F.3d 1106, 1107 (7th Cir.

1999).  In evaluating a motion to dismiss pursuant to Rule 12(b)(6), a court "must accept as true

all the plaintiff's well-pleaded factual allegations and the inferences reasonably drawn from

them."  *Gibson v. City of Chicago*, 910 F.2d 1510, 1520-21 (7th Cir. 1990) (*quoting Yeksigian v.

Nappi*, 900 F.2d 101, 102 (7th Cir. 1990)).  Yet, the court need not accept inferences

unsupported by factual allegations in the complaint or legal conclusions set forth by the plaintiff.

*See Zimmerman v. Tribble*, 226 F.3d 568, 572 (7th Cir. 2000).  Dismissal is appropriate when "it

is clear that no relief could be granted under any set of facts that could be proved consistent with

the allegations."  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

Moreover, "a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to

relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a

cause of action will not do."  *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (quoting Papasan v.

Allain, 478 U.S. 265,286 (1986)).  Not only must the complaint "describe the claim in sufficient

detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it

rests[,]'" but the "allegations must plausibly suggest that the plaintiff has a right to relief, raising

that possibility above a 'speculative level'; if they do not, the plaintiff pleads itself out of court.

*EEOC v. Concentra Health Servs. Inc.,* 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly,*

550 U.S. at 555); s*ee also Killingsworth v. HSBC Bank Nev., N.A.,* 507 F.3d 614, 618-19 (7th

Cir. 2007) (observing that Supreme Court in *Twombly* "retooled federal pleading standards" by retiring the formulation of *Conley v. Gibson*, such that a complaint must now contain "enough facts to state a claim for relief that is plausible on its face." (quoting *Twombly*, 550 U.S. at 570)).

"Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993); *see also Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1249 (7th Cir. 1994) (Court of Appeals affirmed the consideration by the district court of an agreement, which the complaint did not contain, because the document was central to the plaintiff's claims and the plaintiff referred to the document in the complaint). *Accord Horsley v. Feldt*, 304 F.3d 1125, 1133-34 (11th Cir. 2002); *Janas v. McCraken* (*In re Silicon Graphics, Inc. Sec. Litig.*), 183 F.3d 970 (9th Cir. 1999).

**B.     Plaintiff's Complaint Fails to State a Legitimate Claim for Relief**

Consumer confusion is the hallmark of a claim for trademark infringement.  To prevail on a Lanham Act claim, a plaintiff must establish that (1) it has a protectable trademark; and (2) there is a likelihood of confusion as to the origin of the defendant's product.  *Int'l Kennel Club of Chi., Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1084 (7th Cir. 1988).  Proof of these two elements is required for both trademark infringement in violation of Section 32(1) of the Lanham Act (Count I) and unfair competition in violation of Section 43(a) of the Lanham Act (Count II).  *Packman v. Chi. Tribune Co.*, 267 F. 3d 628, 638 (7th Cir. 2001).  Claims under the Illinois Uniform Deceptive Trade Practices Act (Count III), the Illinois Consumer Fraud and Deceptive Business Practices Act (Count IV) and common law unfair competition and trademark infringement claims (Count V) involve the same inquiry and therefore "rise or fall based on the

Lanham Act claim." *MJ & Partners Rest. Ltd. P'ship v. Zadikoff*, 10 F. Supp.2d 922, 929 (N.D. Ill. 1998); *see also Ho v. Taflove*, No. 07C 4305 2010 WL 165869, at *4 (N.D. Ill. Jan.15, 2010); *SB Designs v. Reebok Int'l, Ltd.*, 338 F. Supp. 2d 904, 914 (N.D. Ill. 2004).

To determine whether confusion is likely between two marks, the Seventh Circuit considers the following factors:  (1) the degree of similarity between the marks in appearance and suggestion; (2) the similarity of the products for which the mark is used; (3) the area and manner of concurrent use; (4) the degree of care likely to be exercised by consumers; (5) the strength of the complainant's mark; (6) actual confusion; and (7) intent on the part of the alleged infringer to palm off his products as those of another.  *McGraw-Edison Co. v. Walt Disney Prods.*, 787 F.2d 1163, 1167-68 (7th Cir. 1986) (quoting *Helene Curtis Indus., Inc. v. Church & Dwight Co.,* 560 F.2d 1325, 1330 (7th Cir. 1977)).  "None of these factors by itself is dispositive of the likelihood of confusion question, and different factors will weigh more heavily from case to case depending on the particular facts and circumstances involved." *Int'l Kennel Club*, 846 F.2d at 1087 (quoting *Marathon Mfg. Co. v. Enerlite Prods. Corp.*, 767 F.2d 214, 218 (5th Cir. 1985)).  In this case, each of these factors weighs so strongly in Aflac's favor that Jellyvision's Complaint fails to set forth a claim that is plausible or as to which relief can be granted.

### 1.       The Parties' Marks are Readily Dissimilar

"A name is confusingly similar to an existing trademark if it is similar in sound, appearance, meaning, and connotation." *S Indus., Inc. v. Stone Age Equip., Inc.,* 12 F. Supp.2d 796, 813 (N.D. Ill. 1998) (quoting *S. Indus., Inc. v. GMI Holdings, Inc.*, No. 96 C 2232, 1998 WL 67627, at *6 (N.C. Ill. Jan. 30, 1998)).  To determine whether two marks are similar, the court must view the marks as a whole and as used in the marketplace.  *See AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008); *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 898 (7th

Cir. 2001); *see also Packman*, 267 F. 3d at 646 (noting that the defendants' products and their tags prominently display the well-known *Chicago Tribune* masthead, providing a strong indication that there is no likelihood of confusion).

Compared as a whole, the marks are readily differentiable:





(Compl. ¶ 18.)                    (Compl. ¶ 12.)

Aflac's mark includes the term "quack," which appears in large orange letters, comprises approximately three-quarters of the mark, and includes an image of Aflac's iconic duck character.  (Compl. ¶ 18).  The use of the Aflac duck image immediately communicates that the services sold under the mark originate from Aflac and are insurance services.  The use of the word "quack" is an obvious humorous play on the Aflac duck and the common expression "you don't know jack" and in no way a reference to Jellyvision or its mark.

Other ways the marks differ include Aflac's use of white and orange serif lettering in contrast to the black, marker-type lettering of the Jellyvision's mark.  (Compl. ¶¶ 12,18.) Jellyvision's design mark includes a photograph of a man with a shaved head, with the mark appearing on the man's forehead.  The fact that both parties' marks are in stacked format is unremarkable and commonplace, and insufficient to render the marks confusingly similar in light of the marked and significant difference in the marks in stylized letter and design content.  This factor therefore weighs strongly in Aflac's favor.

## 2.      The Parties' Goods and Services are Substantially Dissimilar

The test for similarity of products is "whether the products are the kind the public attributes to a single source." *McGraw-Edison,* 787 F.2d at 1169.  Two important variables are competitiveness and relatedness.  *S Indus., Inc.*, 12 F. Supp.2d at 814.  Goods are related if consumers would use them in conjunction with each other.  *Id*.  "Goods or services are 'unrelated as a matter of law' and not susceptible to a finding of likelihood of confusion where there are sufficiently sharp differences in the nature of the goods or services."  *Sweet v. City of Chicago*, 953 F. Supp. 225, 231 (N.D. Ill. 1996).

In *Sweet v. City of Chicago,*  the Court granted the defendant's motion to dismiss the plaintiff's trademark infringement claim, noting that the plaintiffs could not in good faith allege that their guidebook, titled *Eat Your Art Out*, was in any sense related to the defendant's art fair event operating under the identical name.  *Id*.; *See, also, Hooker v. Columbia Pictures Indus., Inc.*, 551 F. Supp. 1060, 1065 (N.D. Ill. 1982) (woodcarving services unrelated as a matter of law to entertainment services, namely, a television series); *Toho Co., Ltd. v. Sears, Roebuck & Co.*, 645 F.2d 788, 789-91 (9th Cir. 1981) (BAGZILLA garbage bags unrelated as a matter of law to a GODZILLA cartoon character).

Jellyvision uses its YOU DON'T KNOW JACK mark to identify interactive games. (Compl. ¶¶ 10-17.)  By contrast, Aflac uses its YOU DON'T KNOW QUACK mark solely to promote the sale of insurance underwriting services.  (Compl. ¶ 18).  Jellyvision does not allege that Aflac's use of its mark to identify insurance underwriting services is likely to cause consumer confusion or that it otherwise violates Jellyvision's legal rights, and Jellyvision's Complaint does not seek an injunction against Aflac's use of its mark to identify such services. Jellyvision itself has thus recognized the clear differences in the parties' goods and services.

Jellyvision contends that the three true/false questions on Aflac's website are a "game," but the Complaint contains no allegation that Aflac is selling a game.  The characterization of the three questions as a game is also an obvious mischaracterization for the reasons addressed above. (*See* Ex. 1 hereto.)[6]  A consumer does not come to the website knowing that he or she has the option of answering these questions.  (See banner advertisement attached as Ex. B to the Complaint, which clearly promotes Aflac's insurance services but includes no mention of the true/false questions contained on the website or to a game of any kind.)  Moreover, the website is prominently branded with numerous references to Aflac and the Aflac duck.  As such, no reasonable consumer would confuse the site or the questions on it with Jellyvision or its games, and Jellyvision's argument to the contrary is simply implausible.  As in *Sweet*, the parties' goods and services are unrelated as a matter of law.  This factor therefore weighs heavily in Aflac's favor.

### 3.   Aflac's Services are Provided in an Entirely Different Manner than Jellyvision's Product

In assessing this factor, the Court considers 'whether there is a relationship in use, promotion, distribution, or sales between the goods or services of the parties.' " *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 681 (7th Cir. 2001) (quoting *Forum Corp. of N. Am. v. Forum, Ltd.,* 903 F.2d 434, 442 (7th Cir.1990)).

Jellyvision's YOU DON'T KNOW JACK game "entails players answering humorous multiple-choice questions" and is available on online and on CD-ROM.  (Comp. ¶10)  Aflac

---

[6]      The Website printout attached hereto as Exhibit 1 is properly considered by the Court on this motion because it is referenced in, and central to, Jellyvision's Complaint. *See, e.g., Wright*, 29 F.3d at 1249; *see also Atl. Recording Corp. v. Project Playlist, Inc.*, 603 F. Supp.2d 690, 693 n.3 (S.D.N.Y. 2009) (In considering a motion to dismiss an action against a website owner, the Court stated, "Some of the facts are drawn from the Court's own review of the Website. Because the Website is incorporated by reference into the Complaint, the Court may consider it on a motion to dismiss.").

offers supplemental insurance services that are sold through authorized sales representatives. (*Id*. at 18; Ex. 1 at p. 17.)  Although Jellyvision's Complaint does not identify all distribution channels through which it sells its product, it is safe to say that Jellyvision does not sell its games through insurance agents.  The parties' goods and services thus have entirely different uses and are distributed, promoted and sold in entirely different manners.  This factor weighs strongly in Aflac's favor.

### 4.    Consumers Purchasing Insurance Services Exercise a High Degree of Care

The Seventh Circuit has recognized that, "where consumers are sophisticated, deliberative buyers, confusion is less likely." *Rust Env't & Infrastructure, Inc. v. Teunissen,* 131 F.3d 1210, 1217 (7th Cir. 1997).  Supplemental insurance services are not casual purchases that are lightly made.  Such services are vital to consumers in the event of significant injury or disability.  (*See* Ex. 2, at p. 3.)  The services must be purchased through the assistance of a licensed insurance agent, require a contractual obligation, and cost a minimum of $624 per year. (Ex. 2 at p. 3) (Aflac offers coverage for "as little as $12 a week," or $624/year).  The purchase of supplemental insurance is thus not an insignificant or impulse purchase, causing this factor to weigh squarely in Aflac's favor.

### 5.    Jellyvision's Mark is a Play on a Common Expression and is Thus Weak

The stronger the trademark the greater protection received from the courts. *Nike, Inc. v. "Just Did It" Enters.*, 6 F.3d 1225, 1231 (7th Cir. 1993).  "[T]he term 'strength' as applied to trademarks refers to the distinctiveness of the mark, or more precisely, its tendency to identify the goods sold under the mark as emanating from a particular ... source." *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 959 (7th Cir. 1992) (quoting *McGregor-Doniger Inc. v. Drizzle Inc.,* 599 F.2d 1126, 1131 (2d Cir. 1979)).  The strength of a mark is lessened when the

mark is derived from a common expression. *See, e.g., Packman*, 267 F.3d at 646 ("[T]he district court correctly concluded that the mark [THE JOY OF SIX] was relatively weak; it was a widely used descriptive phrase lacking distinctiveness or recognition with respect to the Bulls' sixth championship.").

In *Packman*, defendant *Chicago Tribune* printed a headline "The Joy of Six" when announcing the Chicago Bull's sixth national championship win and later reproduced an image of the headline on commemorative t-shirts and other apparel. *Id.* at 633. Noting the plaintiff's JOY OF SIX mark was a common expression derived from the popular book *The Joy of Sex*, the Seventh Circuit upheld the District Court's grant of summary judgment in favor of the defendant. *Id*. at 633, 646.

Like the JOY OF SIX mark, Jellyvision's YOU DON'T KNOW JACK mark is based on the commonly used expression "You don't know jack" (although Jellyvision's mark is even less distinctive than the JOY OF SIX mark because Jellyvision's mark is identical to the commonly used expression). Jellyvision's mark is thus weak and entitled to only a narrow scope of protection, causing this factor to weigh in Aflac's favor.

### 6. Jellyvision Does Not Allege That Any Actual Confusion Has Occurred

Jellyvision references no instances of actual confusion in its Complaint. Further, given the differences in the marks and the goods and services provided by the parties, it is implausible that any such confusion is likely to occur. This factor therefore weighs in Aflac's favor.

### 7. Jellyvision's Allegation that Aflac Intended to Trade on Jellyvision's Mark is Neither Plausible nor Well Pleaded

The final factor assesses whether the defendant is attempting to "pass off" its products or services as having come from the plaintiff. *Packman*, 267 F.3d at 646. Jellyvision alleges that Aflac is intending to trade on the goodwill of Jellyvision's mark and games, but this allegation is

- 13 -

implausible on its face.  Aflac is selling insurance services, not games, and the AFLAC mark and duck are prominently featured in all advertising and promotion for its campaign to clearly identify the source of origin of the services being promoted. Jellyvision has not and cannot provide any legitimate rationale or motive that would explain why Aflac would intend to connect its supplemental insurance services with Jellyvision's computer trivia games or would benefit from such a connection.  Jellyvision's allegation that Aflac is intending to trade on its mark is thus not well pleaded and should be disregarded.

### 8.      Summary of the Factors

Given the dissimilarities of the parties' marks, the prominent and consistent use of the Aflac name and Aflac duck mark alongside and as a part of the YOU DON'T KNOW QUACK mark, and the completely unrelated nature of the parties' goods and, Jellyvision's claim that there is a likelihood of confusion between the two marks is not plausible on its face.  All claims in Jellyvision's Complaint should therefore be dismissed with prejudice.

## C.      In the Alternative, Certain of Jellyvision's Claims for Relief Should be Dismissed

In the event the Court denies Aflac's Motion to dismiss all counts of the Complaint, Aflac submits that two of Jellyvision's claims for relief should be dismissed with prejudice.

### 1.      The Court Should Dismiss Jellyvision's Request that the Court Require Aflac to Abandon its Federal Trademark Application

In Paragraph B of its Prayer for Relief, Jellyvision requests that the Court order Aflac to expressly abandon its pending federal trademark registration application for the YOU DON'T KNOW QUACK mark.  Aflac's application is for use of the mark YOU DON'T KNOW QUACK in connection with "Insurance underwriting in the field of health insurance" in Class 36.  (A true and correct print-out of Aflac's application from the U.S. Patent and Trademark Office's online database is attached as Exhibit 4.)

- 14 -

Jellyvision's Complaint does not allege that Aflac's use of its YOU DON'T KNOW QUACK mark to identify insurance underwriting services infringes Jellyvision's rights, nor does Jellyvision request that the Court enjoin such use. (*See* Compl. ¶¶ 18-29.) Jellyvision's request that the Court order Aflac to abandon its application is thus relief that is not supported by the allegations of the Complaint and should be dismissed with prejudice.

### 2.   The Court Should Dismiss Jellyvision's Request for Assignment of the Domain Name

Jellyvision prays that the Court require Aflac to assign its rights in the domain name <youdontknowquack.com> (the "Domain Name") to Jellyvision. (Complaint, Prayer for Relief, ¶ C). The Domain Name is used as the address for a website that promotes insurance services, and Jellyvision's only complaint about the website is its inclusion of three true/false questions. (Comp. ¶ 18). Full relief can be granted to Jellyvision on its claim by an injunction against the inclusion of the true/false questions. Because injunctions should be drawn as narrowly as possible to address the claimed harm, Jellyvision's prayer that the Domain Name be transferred is relief that is neither reasonable nor supportable under the claims asserted and should be dismissed with prejudice.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Aflac submits that all counts of Jellyvision's Complaint should be dismissed with prejudice. In the alternative, Aflac submits that Jellyvision's prayer for relief relating to Aflac's trademark application and Domain Name be dismissed with prejudice. Aflac further requests that it be awarded recovery of the reasonable costs and fees it has been forced to incur to respond to Jellyvision's groundless pleading.

Respectfully submitted this 8th day of March, 2010.



_____/s/ Steven L. Baron_____

LEGAL02/31791715v7

Steven P. Mandell (A.R.D.C. No. 6193729)
smandell@mandellmenkes.com
Steven L. Baron (A.R.D.C. No. 6200868)
sbaron@mandellmenkes.com
MANDELL MENKES LLC
333 West Wacker Dr. Suite 300
Chicago, IL. 60606
Ph (312) 251-1001
Fax (312) 251-1010

David J. Stewart
david.stewart@alston.com
Georgia Bar No. 681149 (*pro hac vice*
pending)
Jason D. Rosenberg
jason.rosenberg@alston.com
Georgia Bar No. 510855
N.D. Illinois General Bar No. 6275801
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
Ph (404) 881-7000
Fax (404) 881-7777
*Counsel for Defendant Aflac Incorporated*

LEGAL02/31791715v7